**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

KAY LORD AND C.L.,                          )
                                            )
            Plaintiffs,                     )
                                            )
      v.                                    )          **Case No. 08-2171-JWL**
                                            )
CITY OF LEAVENWORTH, et. al,                )
                                            )
            Defendants.                     )
                                            )
_____)

## <u>MEMORANDUM AND ORDER</u>

Plaintiffs, Kay Lord and her then minor son, C.L., originally filed suit on April 16, 2008, and after having counsel appointed, they amended their complaint on September 30, 2008.   Plaintiffs allege defendants, City of Leavenworth, "City of Wyandotte," and various individual law enforcement officers, violated their constitutional rights under the Fourth, Fifth, and Fourteenth Amendments and bring suit pursuant to 42 U.S.C. §§ 1983 and 1985 and allege various state-law claims under the Kansas Tort Claims Act, including negligence, false arrest, trespass to land, assault, and battery.   These claims are based on a search of their residence that occurred on April 18, 2006.   This matter is before the court on defendants' motions to dismiss (Doc. 43 and 44).   Defendants contend plaintiffs have failed to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) and also move to dismiss plaintiffs' state law claims for lack of subject matter jurisdiction.   For the following reasons, Wyandotte

defendants' motion to dismiss (Doc. 44) is granted and Leavenworth defendants' motion to dismiss is granted in part and denied in part.

Also before the court is plaintiffs' response to the court's order to show cause why Agent Nelson had not been served within 120 days of the filing of the original complaint. Plaintiffs had a great deal of trouble identifying and thereby serving the various individual law enforcement officers named in the complaint, and the court issued a Notice and Order to Show Cause on November 14, 2008 (Doc. 49) why service of the summons and complaint had not been made upon defendant Agent Nelson within 120 days of filing the original complaint. Plaintiffs responded on December 1, 2008, explaining that the only information Plaintiffs knew of Agent Nelson's involvement was that his name appeared on the warrant and that he was finally served on December 1, 2008 "at his still unknown, but hypothesized place of business at 2600 Grand Avenue, Ste. 280, Kansas City, Missouri." "Plaintiffs' Cause for not Serving Unknown Agent Nelson," Doc. 59, at ¶¶ 2, 5.

## I. FACTS

This suit arises from an incident that occurred on April 18, 2006 at Ms. Lord's home. On April 18, 2006 at approximately 5:15 p.m., Ms. Lord was gardening outside her home at 729 Grand Avenue, Leavenworth, Kansas, when she alleges several "Defendant Officers and on behalf of and with the authority of Nelson and the Defendant Municipalities, and without provocation or legal cause, brutally affronted [her] while armed with masks, automatic weapons and shotguns." Am. Compl., Doc. 39, at ¶ 25.

The officers demanded to know the whereabouts of her son, James McKeighan.  Ms. Lord alleges she repeatedly told the officers that her son did not live at 729 Grand Avenue; he had not lived there for at least three years prior to April 18, 2006; he rarely, if ever, visited the house over the three years; and she had not seen him in over three years.  Nonetheless, the officers continued and entered Ms. Lord's home.  In the process of searching the home for Mr. McKeighan, the officers found Ms. Lord's minor son, C.L., who they allegedly handcuffed, removed from the home, and questioned outside his mother's presence.  Ms. Lord also alleges that Officer Naff "kicked in and broke [her] basement door." *Id.* at ¶ 12.  Finally, Ms. Lord alleges that the officers "did not have a warrant to perform said search at the time it was performed." *Id.* at ¶ 30.

Plaintiffs originally filed suit on April 16, 2008 without the assistance of counsel. Plaintiffs, after receiving court-appointed counsel, filed an amended complaint on September 30, 2008.  The amended complaint names the City of Leavenworth and thirteen of its law enforcement officers, the "City of Wyandotte" and two of its law enforcement officers, and one federal ATF agent.  Plaintiffs claim that the law enforcement officers were involved in various ways in the execution of or the failure to prevent this allegedly unconstitutional search and claim that the City of Leavenworth and "City of Wyandotte" ("Defendant Municipalities") trained, encouraged and allowed their officers to disregard the rights of accused individuals and implemented unconstitutional policies.

## II. MOTION TO DISMISS STANDARD

3

The court will dismiss a cause of action for failure to state a claim only when the factual allegations fail to "state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007), or when an issue of law is dispositive. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic*, 127 S. Ct. at 1964-65. The court must accept the facts alleged in the complaint as true, even if doubtful in fact, *id.* at 1965, and view all reasonable inferences from those facts in favor of the plaintiff. *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). Viewed as such, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic*, 127 S. Ct. at 1965 (citations omitted). The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## III. ANALYSIS

*A. State Law Claims*

This court lacks jurisdiction over plaintiffs' state law claims because plaintiffs have failed to comply with the notice requirements of K.S.A. § 12-105b.[1] K.S.A. §

------

[1]Because the court determines that it does not have jurisdiction over plaintiffs'
(continued...)

4

12-105b requires any person with a claim against a municipality arising under the Kansas Tort Claims Act to file a written notice with the clerk of the governing body of the municipality before filing a suit against the municipality.   Specifically, the statute requires:

> Any person having a claim against a municipality which could give rise to an action brought under the Kansas Tort Claims Act shall file a written notice as provided in this subsection before commencing such action. . . . Once notice of the claim is filed, no action shall be commenced until after the claimant has received a notice from the municipality that it has denied the claim or until 120 days has passed following the filing of the notice of claim, whichever occurs first. . . . No person may initiate an action against a municipality unless the claim has been denied in whole or in part. . . .

K.S.A. § 12-105b(d).  The requirement for a notice of claim is a condition precedent to the filing of a complaint asserting a claim against a municipality.  *Meyers v. Bd. of Jackson County Comm'rs*, 280 Kan. 869, 876, 127 P.3d 319, 325 (Kan. 2006); *Zeferjohn v. Shawnee County Sheriff's Dep't*, 26 Kan. App. 2d 379, 382, 988 P.2d 263, 266 (Kan. Ct. App. 1999).  If a plaintiff fails to meet the requirements of K.S.A. § 12-105b , the court lacks jurisdiction over the claim.  *Meyers*, 280 Kan. at 876, 127 P.3d at 325. This requirement applies to claims against the city itself and claims against the city's

---

[1](...continued)
state law claims, it declines to address the defendants' alternative bases for dismissal of these claims.  It should be noted, however, that Ms. Lord has stipulated that her false arrest, assault and battery claims should be dismissed against all parties because the statute of limitations for each of these claims is one year, and the original complaint was filed April 18, 2008, more than one year after the incident occurred.  *See* "Plaintiffs' Combined Opposition to Defendants' Motion to Dismiss," Doc. 60, at 19-20 (citing K.S.A. § 60-514(b)).

employees arising out of the course and scope of their employment. *King v. Pimentel*, 20 Kan. App. 2d 579, 589, 890 P.2d 1217, 1225 (Kan. Ct. App. 1995).  To comply with the statutory requirements of section 12-105b, plaintiff must attempt to supply the information required by each of the five elements in the statute.  Failure to do so renders the notice fatally defective. *Tucking v. Bd. of Jefferson County Comm'rs*, 14 Kan. App. 2d 442, syl.  3, 796 P.2d 1055 (1990); *see also Zeferjohn*, 26 Kan. App. 2d at 383, 988 P.2d at 267 (discussing how the fact that the amount of damages requested in the lawsuit differed from the amount in the notice renders the notice defective).

Plaintiffs, here, do not allege that they have filed a notice as required by K.S.A. § 12-105b.  Instead, they argue that they have "substantially complied" with the requirement based on their initial filing of this lawsuit.  *See* "Plaintiffs' Combined Opposition to Defendants' Motion to Dismiss," Doc. 60, at 10-12.  According to plaintiffs, "the filing of an earlier petition can constitute proper notice in substantial compliance with K.S.A. § 12-105b(d)." *Id.* at 11 (citing *Tank v. Chronister*, 941 F. Supp. 969, 975 (D. Kan. 1996), *but see Huffmeier v. Bd. of County Comm'rs of Shawnee County*, 2000 WL 34001575 (D. Kan. 2000)).  Plaintiffs argue that their original complaint (Doc. 1) filed on April 16, 2008 contained the information required by section 12-105b to put the municipalities on notice, and that defendant municipalities denied the allegations in their answers.  (Doc. 24 and 25).  Therefore, when plaintiffs filed an amended complaint on September 30, 2008, plaintiffs argue that the municipality had been on notice of the claim 120 days prior to the filing of the amended complaint, and

the original petition served as notice that substantially complied with section 12-105b.

Despite plaintiffs' reliance on *Tank*, their argument remains unpersuasive.  In *Tank*, the plaintiff had previously filed a separate action against the defendant government hospital to preserve access to records, and the court found the previous action constituted substantial compliance with the notice requirement of section 12-105b for a second subsequent lawsuit.  941 F. Supp. at 975.  A later case, *Huffmeier v. Board of County Commissioners of Shawnee County*, clarified that the section 12-105b notice must be provided to the municipality before the suit is filed.  2000 WL 34001575 (D. Kan. 2000).  In *Huffmeier*, the plaintiff attempted to argue, similarly to plaintiffs in this case, that once a complaint was amended, the original complaint could serve as notice of the claim for the purposes of section 12-105b.  However, the court distinguished *Tank* on the basis of two separate actions having been filed and rejected the plaintiff's claim. *Id.* at *4.  In addition, since the *Tank* decision was issued by the U.S. District Court of Kansas, Kansas state and federal courts have highlighted with their decisions that the requirements for "substantial compliance" are rather strict.  For example, the Kansas Supreme Court held that a plaintiff had not substantially complied with the requirements of  section 12-105b when he provided pre-suit notice to the county counselor instead of the clerk or governing body as required by the statute.  *Myers v. Bd. of County Comm'rs of Jackson County*, 280 Kan. 869, 876, 127 P.3d 319, 325 (Kan. 2006).  Similarly, in *Huffman v. City of Prairie Village, Kansas*, 980 F. Supp. 1192, 1206 (D. Kan. 1997), the court held that a letter to a city attorney did not substantially comply with section

12-105b because the statute specifically required that the notice be delivered to the clerk or governing body of the city.   As explained in *Myers*, "if the statutory requirements are not met, the court cannot acquire jurisdiction over the municipality."  280 Kan. at 877, 127 P.3d at 325.  Because the requirement of written notice "applies not only to claims against a municipality, but also to claims against municipal employees acting within the scope of their employment," *Reindl v. City of Leavenworth*, 361 F. Supp. 2d 1294, 1301 (D. Kan. 2005); *see also King v. Pimentel*, 20 Kan. App. 2d 579, 589, 890 P.2d 1217, 1225 (Kan. Ct. App. 1995), and because plaintiffs do not deny that they have failed to file notice as required by section 12-105b, all of their state law claims pursuant to the Kansas Tort Claims Act are subject to dismissal.   Therefore, Counts III-VIII are dismissed as the court lacks subject matter jurisdiction for these claims because plaintiffs failed to file the proper section 12-105b notice.[2]

*B. Section 1983 Claims*

Plaintiffs have also filed 42 U.S.C. § 1983 and § 1985 claims against the various state law enforcement officers, a *Bivens* claim against the federal ATF agent Nelson,[3]

---

[2]Because the statute of limitations for the negligence and trespass to land claims is two years, *see* K.S.A. § 60-513(a)(4); K.S.A. § 60-513(a)(1), all of Ms. Lord's state-law claims are time barred due to her failure to comply with section 12-105b.  As previously discussed, Ms. Lord stipulated to the fact that her assault, false arrest, and battery claims were time-barred as the statute of limitations for each of these claims is one year.  However, it is possible that C.L. could re-file his state-law claims as his claims are not time-barred due to K.S.A. § 60-515(a) which tolls the statute of limitations for any plaintiff less than 18 years of age.

[3]Plaintiffs frame their allegations against Agent Nelson as a *Bivens* action because
(continued...)

and § 1983 claims against Defendant Municipalities.

**1. Defendant Officers**

> Plaintiffs allege that defendant officers and ATF Agent Nelson:
>
> acting under color of state law and within the scope of their employment and authority of Defendant Municipalities, separately and in concert, acted willfully, knowingly and purposefully with specific intent to deprive Plaintiffs of their constitutional and statutory rights, and/or with reckless and callous disregard for Plaintiff's rights including rights of freedom from illegal confinement, unlawful and illegal searches, physical abuse, unreasonable use of force, coercion, and intimidation.

Am. Compl., Doc. 39, at ¶ 40.

In the Leavenworth defendants' motion to dismiss, these defendants deny that plaintiffs "state a viable claim against these officers under Section 1983 " and alternatively, they argue they are protected from § 1983 liability by the doctrine of qualified immunity.  City of Leavenworth's Motion to Dismiss, Doc. 43, at 3, 5-6.  First, these defendants point out that "when an officer relies upon a warrant in executing a home search, he or she is presumed to be acting in good faith."  *Id.* at 3 (citing *United States v. McKneely*, 6 F.3d 1447, 1454 (10th Cir. 1993)).  Defendants argue that plaintiffs have done nothing to rebut this presumption in their allegations.  Plaintiffs argue in their response that the warrant was actually facially deficient—no valid warrant was in effect at the time of the search because the warrant was improperly issued by a

---

[3](...continued)
of defendant Nelson's status as a federal ATF agent.  The same analysis regarding qualified immunity applies to claims under *Bivens* as § 1983 claims.  *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

judge outside of his jurisdiction, the warrant was not at hand at the time the search occurred, and officers had reason to believe that there was insufficient probable cause to serve as the basis for the warrant. "Plaintiffs' Combined Opposition to Defendants' Motion to Dismiss," Doc. 60, at 13-15, 17. Plaintiffs are correct to point out that "[d]epending on the circumstances of the particular case a warrant may be so facially deficient-i.e., in failing to particularize the place to be searched or the things to be seized that the executing officers cannot reasonably presume it to be valid." *Id.* at 17 (quoting *State v. Cardenas*, 26 Kan. App. 2d 135, 980 P.2d 594 (Kan. Ct. App. 1999) (citing *United States v. Leon*, 468 U.S. 897, 923 (1984))).

However, plaintiffs misunderstand the applicability of the law regarding territorial limitations on *certain* search warrants. *See* K.S.A. §22-503 ("Search warrants issued by a district magistrate judge may be executed only within the judicial district in which said judge resides or within the judicial district to which said judge has been assigned pursuant to K.S.A. § 20-319.") (emphasis added). Plaintiffs misread this section as applying to the warrant in this case. However, the issuing judge of the warrant here is a district judge–not a district magistrate judge, and therefore, there is no such limit on the territorial scope of this warrant. The warrant, which plaintiffs attached as exhibit C to their response to defendants' motion to dismiss, was signed by Judge Thomas Boeding, of whose status as a district judge the court takes judicial notice. District court judges and district magistrate judges are not the same as the case cited by the plaintiffs, *State v. Rupnick*, 280 Kan. 720, 733, 125 P.3d 541, 550-51 (Kan. 2005), makes clear.

This case recognizes that the limitations on the territorial reach of warrants outlined in K.S.A. § 22-2503 applies to district magistrate judges, not district court judges. Therefore, the warrant is not facially invalid due to K.S.A. § 22-2503 as the plaintiffs contend.

Plaintiffs also argue that the warrant was not present at the time the search began. According to exhibit C, the warrant and the search warrant return, the warrant was signed at 5:12 p.m., and not executed until 6:36 p.m.  However, this is contrary to the sworn statements of the Plaintiffs and eye-witnesses who insist the police arrived at the Plaintiff's home at 5:15 p.m.  Nonetheless, the search warrant return also reveals that the officer in charge of the search received the warrant at 5:12 p.m., and so even if the search began as soon as the plaintiffs' claim the police arrived at the residence then the officer in charge of the search would have received the warrant.

In addition, plaintiffs argue that "Police Major Kitchens had personal knowledge of McKeighan's whereabouts, and knew that McKeighan no longer lived at [his mother's] residence."[4]  Am. Compl., Doc. 39, at ¶ 28.  Plaintiffs then argue that "Kitchens' personal knowledge is imputed to all other Defendants, thereby creating a special and specific affirmative duty on the part of the Defendants." *Id.*  Plaintiffs argue

_____

[4]According to plaintiffs' amended complaint, one Leavenworth police officer, Major Patrick Kitchens, attended high school with Mr. McKeighan, where they were in the same classes and on the same wrestling team.  Plaintiffs therefore conclude that Major Kitchens "had personal knowledge that Lord's son did not live at his mother's house."  Am. Compl., Doc. 39, at ¶ 8.  Plaintiffs allege that Major Kitchens "had the power but did not stop the search before it happened."  *Id.*

that Major Kitchens' supposed knowledge should be imputed to all defendants; however, § 1983 is not a vicarious liability provision. *See Serna v. Colo. Dep't of Corrections*, 455 F.3d 1146, 1155 (10th Cir. 2006) ("Every governmental official in the chain of command is liable only for his own conduct. . . . the burden is on the plaintiff to develop facts that show the defendant's responsibility for a constitutional violation."). While Major Kitchens may have had a reason to doubt that Mr. McKeighan lived at Ms. Lord's home, plaintiffs have failed to show that the officers actually requesting and executing the search warrant had this same knowledge. *See Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) (holding plaintiff must show defendant being sued individually had knowledge of excessive risk and failed to take steps to alleviate the risk). No where in their complaint do plaintiffs allege that Major Kitchens conveyed his alleged knowledge of Mr. McKeighan's whereabouts to any of the other officers named in the complaint.[5]

Plaintiffs do allege, however, that "[s]ome or all of the Defendant Officers, without provocation or legal cause, intentionally, unlawfully and forcibly entered Lord's home with automatic weapons drawn and pointed towards C.L., a minor child, thereby causing C.L to fear death or serious bodily injury." Am. Compl., Doc. 39, at ¶ 31. Plaintiffs go on to allege that "[s]ome or all of the Defendant Officers...forcibly handcuffed C.L.," "proceeded to search the home" and "unlawfully detained C.L. against

_____

[5]In fact, in their response to defendants' motions to dismiss, plaintiffs admit that "[p]laintiffs are currently unaware of Kitchens' precise role in the raid that occurred on April 4, 2008." "Plaintiffs' Combined Opposition to Defendants' Motions to Dismiss," Doc. 60, at 18.

his will and forcibly questioned him outside of his mother's presence and without her permission." *Id.* at ¶¶ 32, 33, 34.  Because plaintiffs define "Defendant Officers" as "Lawson, Webb, Tytla, Herring, Parker, Neff, Kitchens, Hundley, Crim, Metzger, Vogel, Brandau, Hinkle, Sorrell, and St. John," plaintiffs have possibly alleged that Major Kitchens was involved in the execution of a search warrant that they allege he had no probable cause to believe–if he truly had knowledge that Mr. McKeighan no longer lived at or visited his mother's home.  However, the warrant itself states that the police were looking for drugs and drug paraphernalia, records of narcotics transactions, money that may have been derived from suspected drug sales and firearms, not that the officers were looking for Mr. McKeighan specifically.  Nonetheless, if it is true that Major Kitchens was somehow involved in obtaining and/or executing the search warrant, despite his alleged knowledge of Mr. McKeighan's whereabouts, as plaintiffs appear to allege, then it is possible plaintiffs have sufficiently pled a § 1983 violation by Major Kitchens himself.  However, plaintiffs are incorrect in arguing that Major Kitchens' alleged knowledge should be imputed to every other defendant.  As explained above, § 1983 is not a vicarious liability provision.  *Serna*, 455 F.3d at 1155.  "Every governmental official in the chain of command is liable only for his own conduct. . . . the burden is on the plaintiff to develop facts that show the defendant's responsibility for a constitutional violation."  *Id.*  Therefore, plaintiffs have failed to allege a § 1983 violation by defendants, excluding possibly Major Kitchens, involved in the search of Ms. Lord's home.  Because defendants have no § 1983 liability for the execution of a valid search

warrant, plaintiffs have failed to show that defendants violated plaintiffs' constitutional rights.

Finally, plaintiffs bring specific allegations against Officer Naff that he "assisted Det. Lawson in interrogating the juvenile Plaintiff C.L without his mother's presence or consent" and "kicked in and broke down Plaintiff's basement door." Am. Compl., Doc. 39, at 12. However, it is not illegal to question the occupants of a building during a search and it is not illegal "to detain the occupants of the premises while a proper search is being conducted." *See Muehler v. Mena*, 544 U.S. 93, 97-98 (2005) (discussing the appropriateness of detaining occupants of a searched home, even in handcuffs, while the search is being executed). The Supreme Court makes clear in *Muehler* and *Michigan v. Summers,* 452 U.S. 692 (1981), that officers are justified in detaining the occupants of residences that they are executing a search warrant for contraband. Therefore, Officer Naff did not violate C.L.'s constitutional rights when C.L was detained and questioned about the whereabouts of his brother while the residence for which the police had a valid warrant was being searched.

In addition, "officers executing search warrants on occasion must damage property in order to perform their duty." *Dalia v. United States*, 441 U.S. 238, 258 (1979). Therefore, the destruction of property–like breaking a basement door–does not necessarily violate the Fourth Amendment. "[O]nly unnecessarily destructive behavior, beyond that necessary to execute a warrant effectively, violates the Fourth Amendment." *Mena v. City of Simi Valley*, 226 F.3d 1031, 1041 (9th Cir. 2000) (citing *Liston v. County*

*of Riverside*, 120 F.3d 965, 979 (9th Cir. 1997) and *United States v. Becker*, 929 F.2d 442 (9th Cir. 1991)).  In *Mena*, the police broke down two doors that were unlocked and the plaintiff testified that she heard one officer kicking an open door in the house while saying "I like to destroy these kinds of materials; it's cool." *Id.*  Here, plaintiffs have not alleged that Officer Naff was unnecessarily destructive; rather, he broke down a door while executing a valid search warrant.  Therefore, plaintiffs have failed to allege a violation of § 1983 based on the limited property damage of the basement door.

In the alternative, defendants argue that they are protected from liability on plaintiffs' § 1983 claims by the doctrine of qualified immunity.  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Chidester v. Utah County,* 268 Fed. App'x 718, 730 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  Generally, government officials performing discretionary functions are shielded from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In order for a right to be "clearly established," it must be established in a particularized, relevant sense: the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  "Once a defendant has raised qualified immunity as an affirmative defense. . ., the plaintiff bears the heavy two-part burden of demonstrating that (1) the defendant violated a constitutional right and (2) the constitutional right was clearly

15

established at the time of the alleged conduct." *Reeves v. Churchich*, 484 F.3d 1244, 1250 (10th Cir. 2007).  The court must first determine "whether the plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002); *accord Trask v. Franco*, 446 F.3d 1036, 1043 (10th Cir. 2006).  "As to the second element, law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains." *Trask*, 446 F.3d at 1043 (quotation omitted).  As previously discussed, plaintiffs have failed to show that defendants violated their constitutional rights because defendants were merely executing a valid search warrant, and as a result, defendants are protected from plaintiffs' § 1983 claims by the doctrine of qualified immunity.  Plaintiffs cannot satisfy the first prong of the test for overcoming a qualified immunity defense.  Therefore, defendants' motion to dismiss plaintiffs' § 1983 claims is granted as well.[6]

## 2. Defendant Municipalities

Plaintiffs allege that Defendant Municipalities denied plaintiffs' constitutional rights "[a]s a direct result of [their] callous and reckless disregard of the rights of the

---

[6]It appears to the court that the same, ultimately successful, arguments against § 1983 liability made by the Leavenworth defendants could be made by the Wyandotte defendants.  However, the motion to dismiss by the Wyandotte defendants only addressed the state law claims.  Therefore, the court orders the plaintiffs to show good cause by February 13, 2009 why the § 1983 claims against the Wyandotte defendants should not also be dismissed for the same reasons that the § 1983 claims against the Leavenworth defendants are dismissed.  The Wyandotte defendants shall have twenty-three days to reply to any such filing.

Plaintiffs, with respect to the training, supervision and ratification of Defendant Officers."  Am. Compl., Doc. 39, at  ¶ 44.

A municipality may not be held liable under 42 U.S.C. § 1983 simply because it employs a person who violated a plaintiff's federally protected rights.  *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).  To establish municipal liability, a plaintiff must show (1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged.  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993).  If the plaintiff asserts the alleged custom or policy comprised a failure to act, he or she must demonstrate the municipality's inaction resulted from "deliberate indifference to the rights" of the plaintiff.  *Harris*, 489 U.S. at 389. More specifically, if the inaction theory rests on an alleged failure to train, the plaintiff must prove "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need" for additional training. *Id.* at 390. Ordinarily, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose [municipal] liability." *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).  In the case where a plaintiff seeks to impose municipal liability on the basis of a single incident, the plaintiff must show the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued. *Pembaur v. City of Cincinnati*,

17

475 U.S. 469, 483-85 (1986); *Butler*, 992 F.2d at 1055 (plaintiff must prove the single incident was "caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker").

Here, plaintiffs have pointed to no evidence or reasonable inferences therefrom that Wyandotte and Leavenworth had a custom or policy of permitting their officers to "disregard the rights of the accused individuals."  Am. Compl., Doc. 39, at ¶ 43.  Even if the court assumes for the limited purposes of this discussion that a violation occurred during the search of Ms. Lord's home, there is no evidence to indicate a direct causal link between any municipal custom or policy and the violations alleged.  *See Harris*, 489 U.S. 385.  Nor is there any evidence that Wyandotte or Leavenworth promoted through some custom or policy the execution of illegal warrants.

*C. Show Cause Order Regarding Service on Agent Nelson*

On November 14, 2008, the court ordered plaintiffs to show good cause "why service of the summons and complaint was not made in this case upon defendant Unknown Nelson within 120 days from the filing of the complaint, and shall further show good cause. . .why this action should not be dismissed as to defendant Unknown Nelson in its entirety without prejudice."  "Notice and Order to Show Cause," Doc. 49, at 1-2.  Federal Rule of Civil Procedure 4(m) reads:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall

extend the time for service for an appropriate period.

On December 1, 2008, plaintiff explained that "[t]he only information Plaintiffs knew of Unknown Agent Nelson's involvement was that his name appeared on the warrant." "Plaintiffs' Cause for not Serving Unknown Agent Nelson," Doc. 59, at ¶ 2.  They further explained that he was finally served within 120 days of the filing of the First Amended Complaint on December 1, 2008 "at his still unknown, but hypothesized place of business."  *Id.* at ¶ 5.  Plaintiffs cite plaintiffs' originally unrepresented status, the numerous defendants involved, and her good faith efforts as constituting good cause for failing to serve Agent Nelson within the 120 day window of the original filing of the complaint.  *Id.* at ¶ 10.  "The 'good cause' provision of [Rule 4(m) ] should be read narrowly to protect only those plaintiffs who have been meticulous in their efforts to comply with the Rule."  *Despain v. Salt Lake Area Metro Gang Unit*, 13 F.3d 1436, 1438 (10th Cir.1994); *see also In re Kirkland*, 86 F.3d 172, 174 (10th Cir.1996) (Tenth Circuit has interpreted "good cause" narrowly).[7]  This "good cause" standard requires a showing greater than "excusable neglect".  *See Kirkland*, 86 F.3d at 175.  Simple inadvertence or ignorance of the rules does not suffice.  *See id.* at 174; *Cox v. Sandia Corp.*, 941 F.2d 1124, 1125 (10th Cir.1991); *Putnam v. Morris*, 833 F.2d 903, 904 (10th

---

[7]The cited cases involved former Rule 4(j), the predecessor to present Rule 4(m). The Tenth Circuit has stated, however, that cases interpreting the "good cause" standard under former Rule 4(j) provide guidance in applying that standard under the present rule. *See Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir .1995).

19

Cir.1987).  Here, because plaintiffs were attempting to identify Agent Nelson along with fourteen other defendants while waiting for counsel to be appointed, and because they ultimately purported to achieve service on December 1, 2008 within 120 days of their amended complaint, plaintiffs have shown good cause as to why service was delayed.[8] However, while the court is aware defendant Agent Nelson has not answered the complaint, the court orders plaintiffs to show cause by February 13, 2009  why the § 1983 claims against Agent Nelson should not be dismissed for the same reasons that the § 1983 claims against the Leavenworth defendants are dismissed.  Further, plaintiffs are ordered to show good cause as of that date why the state-law claims against Agent Nelson should not also be dismissed for lack of subject matter jurisdiction in the event the federal law claims are dismissed.  Because Agent Nelson has not entered an appearance in this case, he shall not be permitted to reply to any such showing without leave of court.

IT IS THEREFORE ORDERED BY THE COURT THAT the Wyandotte defendants' motion to dismiss (Doc. 44) is granted and the Leavenworth defendants' motion to dismiss (Doc. 43) is granted in part and denied as to Major Kitchens.

IT IS THEREFORE ORDERED BY THE COURT THAT plaintiffs show good cause by February 13, 2009 why the § 1983 claims against the Wyandotte defendants should not be dismissed.  The Wyandotte defendants may file a reply to any such filing

---

[8]By this finding the court expresses no opinion on the effectiveness of the service or on any other matter arising out of its purported making.

within twenty-three days of its being served on them.

IT IS THEREFORE ORDERED BY THE COURT THAT plaintiffs show good cause by February 13, 2009 why the § 1983 claims against Agent Nelson should not be dismissed, and further, why the state-law claims should not be dismissed for want of subject matter jurisdiction in the event the federal claims are dismissed.  Agent Nelson may not file a reply to any such filing without leave of court.

IT IS SO ORDERED.


Dated this 20th day of January, 2009, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge
